UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | |
|---|---|
| JOSEPH D. | : |
| | : |
| v. | :    C.A. No. 25-00127-AEM |
| | : |
| FRANK BISIGNANO, Commissioner, | : |
| Social Security Administration | : |

**MEMORANDUM AND ORDER**

AMY E. MOSES, United States Magistrate Judge.

      Plaintiff Joseph is a 45-year-old who suffers from severe impairments of major depressive disorder, impulse control disorder, generalized anxiety disorder, personality disorder, post-traumatic stress disorder, and a history of substance use disorder. ECF No. 7 at 26. The Commissioner of the Social Security Administration (the "Commissioner" or "Defendant") denied Joseph's claims for Supplemental Security Income ("SSI") and Social Security Disability Insurance ("SSDI") under the Social Security Act (the "Act"), 42 U.S.C. § 405(g). *Id.* at 23-35.

      With the consent of the parties, this case has been referred to me for all further proceedings and the entry of judgment in accordance with 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure. Based upon my review of the record, the parties' submissions, and independent research, I find that there is substantial evidence in the record to support the Commissioner's decision and findings that Joseph is not disabled within the meaning of the Act.

    **I.**    **PROCEDURAL HISTORY**

      Joseph filed concurrent applications for SSDI and SSI on December 12, 2022. ECF No. 7 at 23. His claims were denied initially on March 9, 2023 (*id.* at 113-22) and again on reconsideration on June 15, 2023. *Id.* at 129-36. Joseph requested an Administrative Hearing that was held on January 24, 2024 before the Administrative Law Judge (the "ALJ"). *Id.* at 41-78. At the hearing, Joseph,

represented by counsel, testified and the Vocational Expert (the "VE") Edmond Calandra testified as well.  *Id.*  The ALJ issued a decision unfavorable to Joseph on April 2, 2024.  *Id.* at 20-35.  The Appeals Council denied Joseph's request for review on January 28, 2025.  *Id.* at 5-11.

Joseph timely appealed by filing his Complaint on April 3, 2025 seeking to reverse the decision of the Commissioner.  ECF No. 1.  On July 28, 2025, Joseph filed a Motion to Reverse the Decision of the Commissioner.  ECF No. 12.  On August 14, 2025, the Commissioner filed a Motion for an Order Affirming the Decision of the Commissioner.  ECF No. 14.  Joseph did not file a reply.

## II.   STANDARD OF REVIEW

The Commissioner's findings as to any fact "shall be" conclusive if supported by substantial evidence.  42 U.S.C. § 405(g).  Substantial evidence "means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).  The determination of substantiality is based upon an evaluation of the record as a whole.  *Frustaglia v. Sec'y Health & Hum. Servs.*, 829 F.2d 192, 195 (1st Cir. 1987) (per curiam); *Brown v. Apfel*, 71 F. Supp. 2d 28, 30 (D.R.I. 1999), *aff'd*, 230 F.3d 1347 (1st Cir. 2000) (per curiam).

The Court's role in reviewing the Commissioner's decision is limited.  *Brown*, 71 F. Supp. 2d at 30.  The Court does not reinterpret or reweigh the evidence or otherwise substitute its own judgment for that of the Commissioner.  *Thomas P. v. Kijakazi*, C.A. No. 21-00020-WES, 2022 WL 92651, at *8 (D.R.I. Jan. 10, 2022), *report and recommendation adopted by text order*, (D.R.I. Mar. 31, 2022).  Where the Commissioner's decision is supported by substantial evidence, the Court must affirm, even if the Court would have reached a contrary result as the finder of fact.  *Tegan S. v. Saul*, 546 F. Supp. 3d 162, 168 (D.R.I. 2021); *Rodriguez Pagan v. Sec'y Health & Hum. Servs.*, 819 F.2d 1, 3 (1st Cir. 1987).

### III.   ALJ DECISION

The ALJ must follow a five-step process in evaluating a claim of disability. *See* 20 C.F.R. §§ 404.1520, 416.920. The claimant bears the burden of proof at Steps One through Four, and the Commissioner bears the burden at Step Five. *Wells v. Barnhart*, 267 F. Supp. 2d 138, 144 (D. Mass. 2003).

Here, the ALJ determined at Step One that Joseph had not worked at a level that rose to substantial gainful activity since the alleged onset date. ECF No. 7 at 25. At Step Two, the ALJ found that his major depressive disorder, impulse control disorder, generalized anxiety disorder, personality disorder, post-traumatic stress disorder, and a history of substance use disorder were severe impairments. *Id.* at 26.

At Step Three, the ALJ first found that Joseph did not have an impairment or combination of impairments that met or medically equaled a Listing. *Id.* at 26-27. The ALJ next determined that Joseph had the Residual Functional Capacity ("RFC")[1] to perform a full range of work at all exertional levels. *Id.* at 28. The RFC contained the following non-exertional limitations: Joseph can understand, remember, and carry out simple instructions; occasionally interact with supervisors and coworkers; never interact with the general public; and tolerate occasional changes in a routine work setting. *Id.*

At Step Four, the ALJ determined that Joseph had four positions that qualified as past relevant work but that he was unable to perform any of his past relevant work. *Id.* at 32-33. Finally, relying

---

[1] RFC is "the most you can still do despite your limitations," considering "[y]our impairment(s), and any related symptoms, such as pain, [that] may cause physical and mental limitations that affect what you can do in a work setting." 20 C.F.R. § 404.1545(a)(1).

on the testimony of the VE, the ALJ at Step Five found that Joseph was not disabled because he could do a significant number of unskilled jobs in the national economy. *Id.* at 33-34.

## IV. ANALYSIS

On appeal to this Court, Joseph claims the ALJ erred as a matter of law in four ways: (A) in evaluating the medical opinions and prior administrative medical findings; (B) in her Step 3 analysis; (C) in formulating Joseph's RFC; and (D) in her Step 5 analysis. ECF No. 12 at 3. Joseph seeks an order reversing the decision of the Commissioner and remanding for further proceedings. *Id.* at 2. The Commissioner moves to affirm the ALJ's decision, contending that the ALJ properly evaluated the medical opinions and prior administrative medical findings; that the ALJ's analyses at Steps 3 and 5 were sufficiently supported; and that Joseph's RFC accounts for his ability to work a normal workday and workweek. ECF No. 14 at 2-3.

### A. The ALJ's Evaluation of Medical Opinions and Prior Administrative Medical Findings

Joseph first argues that the ALJ erred in evaluating the medical opinions and prior administrative medical findings. ECF No. 12 at 6. In support of this argument, he asserts that the ALJ "nominally addressed the supportability and consistency factors required by 20 C.F.R. § 404.1520c" and that her evaluation dismisses the "consistent assessments" of treating psychiatrist Dr. Rodrigo Nardi, M.D., treating therapist Mr. Hazer Reyes, L.C.S.W., and consultative examiner Dr. Louis E. Cerbo, Ed.D. "without adequate reconciliation of the record as a whole." ECF No. 12 at 9. Joseph further claims that the ALJ inappropriately substituted her own "lay analysis" in selecting the opinions she found more persuasive. *Id.* at 9-10. In response, the Commissioner contends that the ALJ properly evaluated the medical opinions and prior administrative medical findings in addressing the supportability and consistency factors. ECF No. 14 at 6-11.

The ALJ is responsible for weighing the medical evidence and resolving conflicts. *See, e.g.*, *Seavey v. Barnhart*, 276 F.3d 1, 10 (1st Cir. 2001). Pursuant to 20 C.F.R. §§ 404.1520c(a), 416.920c(a), an ALJ does not assign specific evidentiary weight to any medical opinion and does not defer to the opinion of any medical source, including the claimant's treating providers. The ALJ instead must evaluate the relative persuasiveness of the medical evidence in terms of five specified factors: (1) supportability (the relevance of the opinion's cited objective medical evidence); (2) consistency (how consistent the opinion is with all of the evidence from medical and non-medical sources); (3) treatment/examining relationship (including length of treatment relationship, frequency of examinations, purpose of treatment relationship, and existence and extent of treatment/examining relationship); (4) specialization (the relevance of the source's specialized education or training to the claimant's condition); and (5) "other factors" (including the medical source's familiarity with the claimant's medical record as a whole and/or with the Social Security Administration's policies or evidentiary requirements). *Id.* §§ 404.1520c(c)(1)-(5), 416.920c(c)(1)-(5); *Shaw v. Saul*, Civil No. 19-CV-730-LM, 2020 WL 3072072, at *4 (D.N.H. June 10, 2020). Of the five factors, the "most important" are supportability and consistency. 20 C.F.R. §§ 404.1520c(a), (b)(2), 416.920c(a), (b)(2). The ALJ's evaluation of medical opinions "must be upheld if supported by substantial evidence, even if contrary results might have been tenable also." *Benetti v. Barnhart*, 193 Fed. Appx. 6, 7 (1st Cir. 2006) (per curiam) (citing *Rodriguez Pagan*, 819 F.2d at 3).

The ALJ considered the opinions rendered by state agency mental health consultants Dr. Jeffrey Hughes, Psy.D, and Dr. Clifford Gordon, Ed.D.; and the medical opinions of Dr. Nardi, Mr. Reyes, and Dr. Cerbo. The ALJ found Dr. Hughes' opinion to be persuasive as it was "supported by the record available at the time it was formed." ECF No. 7 at 30-31. The ALJ elaborated that Dr. Hughes' opinion was consistent with "recent examination notes, which do not generally reveal

any abnormal findings aside from an abnormal mood." *Id.* at 31.  Similarly, the ALJ found persuasive the opinion of Dr. Gordon that Joseph could "attend to tasks that are basic, routine, repetitive, and familiar in nature" and could relate to co-workers but have only limited contact with supervisors and the general public.  *Id.* at 31, 96-103.  The ALJ specified that Dr. Gordon's opinion was "generally consistent" with "the most recent examination notes," which describe Joseph's "speech as clear; thought processes as logical;" and his thought content, cognition, insight, and judgment as "within normal limits."  *Id.* at 31.  The ALJ explained that the prior administrative medical findings implied a "limited ability to interact with others" and that she had accounted for such limitation.  *Id.*  The ALJ stated that this limitation was "consistent with the evidence of record indicating anxiety and irritability around others in the context of the claimant's reports that his medications help to reduce his symptoms."  *Id.*

On the other hand, the ALJ found that Dr. Nardi's opinion that Joseph is "seriously limited" in several areas was not persuasive because the opinion was not supported by examination notes or consistent with Joseph's activities of daily living.  *Id.* at 31-32.  In support of this finding, the ALJ indicated that Dr. Nardi described Joseph's "affect as full; speech as clear; thought processes as logical;" and his thought content, cognition, insight, and judgment as "within normal limits."  *Id.* at 31.  Joseph's activities of daily living, including his ability to shop and prepare meals, play team sports, deliver food through DoorDash®, and maintain a well-groomed appearance, also conflicted with Dr. Nardi's opinion that he was "seriously limited."  *Id.* at 32.  Similarly, Mr. Reyes rendered an opinion that Joseph was "seriously limited," but the ALJ found that such opinion lacked the support of examination notes and was inconsistent with both the mental status examinations completed by Dr. Nardi and Joseph's activities of daily living.  *Id.*  Finally, Dr. Cerbo opined that Joseph has a "highly guarded prognosis" and noted that he has "low impulse control, mistrust of others,

and . . . multiple jobs terminated due to interpersonal relationship issues." *Id.* The ALJ concluded that Dr. Cerbo's opinion was "inconsistent with the record as a whole, including generally unremarkable mental status exam findings in mental health progress notes and the claimant's activities of daily living." *Id.*

As detailed above for each medical professional, including treating physician Dr. Nardi and treating therapist Mr. Reyes, the ALJ's determination of persuasiveness was governed by the regulatory factors, including supportability and consistency. The medical record was reconciled and the ALJ did not substitute her own "lay analysis." Because the ALJ's determination as to medical opinions and prior administrative medical findings is supported by substantial evidence, it must be upheld.

### B.  Step 3:  The Mental Health Listings

Joseph's next argument is that the ALJ erred in her Step 3 evaluation of whether his mental health impairments met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. ECF No. 12 at 11. Specifically, he claims that the evaluation of medical equivalence under paragraph B was boilerplate and that the paragraph C criteria was not adequately addressed. *Id.* The Commissioner counters that Joseph does not set forth evidence to contradict the ALJ's analysis or findings. *Id.* at 11-12. At Step Three, the burden rests on Joseph to prove that his impairment or combination of impairments met or medically equaled a listed impairment. *See Wells*, 267 F. Supp. 2d at 144. The Court addresses each argument in turn.

#### 1.  Paragraph B Criteria

Based on Joseph's severe impairments of major depressive disorder; impulse control disorder; generalized anxiety disorder; personality disorder; post-traumatic stress disorder; and his history of substance use disorder, the relevant listed impairments are 12.04 (for depression), 12.06 (for anxiety), 12.08 (for personality and impulse control disorders), and 12.15 (for trauma and stressor-related

disorders). To satisfy the paragraph B criteria for these Listings, a claimant's impairment must result in an extreme limitation of one, or a marked limitation of two, of the following areas of mental functioning: (a) understand, remember, or apply information; (b) interact with others; (c) concentrate, persist, or maintain pace; and (d) adapt or manage oneself. 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.00(A)(2)(b). An extreme limitation is the inability to function independently, appropriately, or effectively, and on a sustained basis. *Id.* § 12.00(F)(2)(e). A marked limitation is a seriously limited ability to function independently, appropriately, or effectively, and on a sustained basis. *Id.* § 12.00(F)(2)(d).

The ALJ evaluated the paragraph B criteria and determined that Joseph had no more than moderate limitations[2] in these areas, not meeting or medically equaling a listed impairment. ECF No. 7 at 26-27. The ALJ relied on Joseph's Function Report (*id.* at 324-31); his treatment records (*id.* at 375-425, 854-935, 948-1035, 1036-1106); the Psychiatric Examination completed by Dr. Cerbo (*id.* at 846-53); and the evidence recited below in reviewing each of the four mental functional areas. *Id.* at 26-27.

    **a.**    On "understanding, remembering or applying information," the ALJ noted the following findings: Joseph reported difficulty following instructions (*id.* at 329), yet the evidence included his ability to perform simple tasks that require memory such as the ability to recall four out of four unrelated objects immediately and after a short delay (*id.* at 850), and his memory was described as intact (*id.* at 408, 850, 1030). *Id.* at 26.

    **b.**    On "interacting with others," the ALJ noted that while Joseph has an abnormal mood and affect (*see id.* at 963, 975, 995, 2053), his prescription medication helps to "reduce his anxiety

---

[2] A moderate limitation is a fair ability to function independently, appropriately, effectively, and on a sustained basis, 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.00(F)(2)(c), a less severe limitation rating than extreme and marked.

and irritability" (*id.* at 1013) and he can play team sports such as basketball and deliver food with DoorDash® (*id.* at 876, 1053). *Id.* at 27.

    **c.**    On "concentrating, persisting or maintaining pace," the ALJ noted, among other things, that while Joseph did report difficulty completing tasks, he was able to "perform simple tasks that require concentration." *Id.* Specifically, he was able to perform serial three and seven tasks, recall four out of four unrelated objects immediately and after a short delay, and spell a five-letter word backward. *Id.* The ALJ stated there was no evidence that Joseph required "redirection" during medical examinations and his treating provider indicated he was "able to attend interview." *Id.* at 27, 1030.

    **d.**    On "adapting or managing oneself," the ALJ noted that Joseph self-reported that he had no problems with his personal care. *Id.* at 27, 325. He appeared "well-groomed during medical examinations, suggesting that he does so successfully." *Id.* at 27. Joseph also reported he is a "very good cook" and can rake, cut grass, do laundry, and take the bus when needed. *Id.* at 50, 326. The ALJ also recognized Joseph's inpatient treatment and his self-reported difficulty handling stress and changes in routine. *Id.* at 27.

In short, the ALJ's findings that Joseph did not meet or medically equal Listings 12.04, 12.06, 12.08 or 12.15 are supported by the record as detailed above. Consistent with the ALJ's determination, the state agency consultants Dr. Hughes and Dr. Gordon did not opine on anything more than moderate limitations due to his mental impairments. *Id.* at 80-86, 96-103. In contrast, Joseph (who bears the burden at Step 3) points to no medical source who has found that his impairments meet or equal the relevant Listings. Thus, the Court must affirm the ALJ's Step 3 finding as to the paragraph B criteria because it is supported by substantial evidence and because Joseph did not meet his burden of proof.

### 2. Paragraph C Criteria

Joseph next specifically calls out the ALJ's analysis of paragraph C criteria for Listings 12.04 (for depression), 12.06 (for anxiety), and 12.15 (for trauma and stressor-related disorders),[3] asserting that her "single sentence dismissal" does not comply with the articulation requirements of Social Security Ruling ("SSR") 17-2p. ECF No. 12 at 12. Pursuant to SSR 17-2p, an "adjudicator's articulation of the reason(s) why the individual is or is not disabled at a later step in the sequential evaluation process will provide rationale that is sufficient for a subsequent reviewer or court to determine the basis for the finding about medical equivalence at step 3." 82 Fed. Reg. 15263-02 (Mar. 27, 2017), at *15265. The Commissioner counters that Joseph's paragraph C argument is "vague, unsupported and undeveloped" and that the ALJ's decision is legally sound as it rests upon the findings of the state agency consultants. ECF No. 14 at 14.

Paragraph C provides an alternative to paragraph B for meeting Listings 12.04, 12.06, and 12.15. 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.00(A)(2). Paragraph C is met when a claimant has a mental health disorder that is "serious and persistent;" *i.e.*, the claimant has a "medically documented history of the existence of the disorder over a period of at least 2 years," and the claimant satisfies the requirements of (1) "[m]edical treatment, mental health therapy, psychosocial support(s), or a highly structured setting(s) that is ongoing and that diminishes the symptoms and signs of [the] mental disorder," and (2) "[m]arginal adjustment," *i.e.*, a claimant retains "minimal capacity to adapt to changes in your environment or to demands that are not already part of your daily life." *Id.* § 12.00(A)(2)(c), (G)(2)(b)-(c).

In support of his bid to reverse and remand, Joseph claims that the "record contains evidence of [his] reliance on structured support (therapy, medication management)" and his "inability to

---

[3] Listing 12.08 (personality and impulse-control disorders) does not include paragraph C criteria. 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.00(A)(2).

maintain stability without such structure." ECF No. 12 at 12. While Joseph cites a variety of evidence[4] in support of his contention that the ALJ did not "address the longitudinal records" (*id.* at 11-12), all of this evidence was considered by the ALJ. ECF No. 7 at 26-29, 32. The Court may not now reweigh that evidence in a manner more favorable to Joseph. *See Seavey*, 276 F.3d at 10 ("[T]he responsibility for weighing conflicting evidence, where reasonable minds could differ as to the outcome, falls on the Commissioner and his designee, the ALJ.").

Additionally, the state agency psychological consultants opined that Joseph did not satisfy the paragraph C criteria. ECF No. 7 at 83, 90, 98, 106. There is no evidence in the record, or set forth by Joseph, that undermines those assessments. While the ALJ's paragraph C evaluation is cursory, the Court finds that the ALJ provided sufficient articulation of her reasons that Joseph was not disabled in the RFC. Specifically, the ALJ relied upon the opinions of the state agency consultants in the RFC section, those consultants are deemed "highly qualified and experts in Social Security disability evaluation," 20 C.F.R. § 404.1513a(b)(1), and they found that Joseph did not meet the paragraph C criteria. Joseph set forth no evidence to contradict such findings, therefore his challenge to the ALJ's analysis of the paragraph C criteria fails.

### C. Joseph's RFC

Joseph's third argument assigns error to the ALJ's RFC analysis, contending that she (i) did not address or analyze how his mental health limitations would interrupt his ability to complete a normal workday and workweek; and (ii) failed to "build an accurate and logical bridge" between the RFC and evidence. ECF No. 12 at 12-15. The Commissioner disputes Joseph's claims and contends

---

[4] Joseph cites his (1) August 2020 hospitalization for suicidal ideation; (2) longstanding diagnoses of PTSD, personality disorder, and impulse control disorder; and (3) paranoia, volatility, and inability to adapt to stressors as evidence in support of this point. ECF No. 12 at 11-12.

that the ALJ appropriately accounted for Joseph's mental health limitations in formulating a legally sound RFC.  ECF No. 14 at 15-17.

First, while Joseph advocates for "work-related mental limitations," he again is advocating that the Court reweigh the evidence presented and adopt the finding of Joseph's treating therapist, Mr. Reyes, who opined that Joseph would miss approximately two days of work a month due to "psychologically based symptoms."  ECF No. 7 at 32.  As previously discussed, the ALJ properly analyzed the various medical opinions and found persuasive the opinions of the state agency psychological consultants Dr. Hughes and Dr. Gordon.

State agency consultants like Dr. Hughes and Dr. Gordon are "tasked with assessing a claimant's capacity to sustain work over a normal workday and workweek on an ongoing basis, and to do otherwise would, of course, provide no insight into a claimant's actual functional capacity." *Emily C. v. Dudek*, C.A. No. 24-00324-LDA, 2025 WL 1263715, at *7 (D.R.I. May 1, 2025)  The Social Security Administration's Program Operations Manual System ("POMS") directs adjudicators to "consider a claimant's ability or inability to sustain a forty-hour workweek; advising that '[i]nability to sustain a 40-hour workweek is an RFC finding.'" *Christopher B. v. Kijakazi*, No. 1:22-cv-00333-NT, 2023 WL 5949446, at *4 (D. Me. Sept. 13, 2023) (quoting POMS DI § 24510.057(B)(1)-(2), (4)), *report and recommendation adopted*, 2023 WL 6390661 (D. Me. Oct. 2, 2023).  Here, neither of the state agency consultants found any attendance-related limitations after reviewing the record.[5]  Instead, the state agency consultants found that Joseph could complete a

---

[5] As noted in the Commissioner's brief (ECF No. 14 at 15-16), the Court has repeatedly dispatched with this argument.  *See, e.g.*, *Marissa L. v. Bisignano*, C.A. No. 24-323-MRD-PAS, 2025 WL 2463218, at *5-6 (D.R.I. Aug. 26, 2025), *report and recommendation adopted by text order*, (D.R.I. Sept. 24, 2025); *Basil C. v. Bisignano*, C.A. No. 24-cv-421-JJM-AEM, 2025 WL 1431017, at *2 (D.R.I. May 19, 2025); *Emily C.*, 2025 WL 1263715, at *7; *Christine L. v. Colvin*, C.A. No. 24-145-LDA, 2024 WL 5118440, at *7 (D.R.I. Dec. 16, 2024); *Thomas L. v. O'Malley*, C.A. No. 24-00195-WES, 2024 WL 4948805, at *8 (D.R.I. Dec. 3, 2024), *report and recommendation adopted by text*

normal work schedule of eight hours a day, five days a week, forty hours a week within the limitations in the RFC. ECF No. 7 at 84, 91 (noting Joseph "can finish simple 1-3 step familiar tasks over the course of a normal 8/5/40 work routine"); *id*. at 100 (finding Joseph can complete simple tasks "in two-hour blocks of time"). Joseph's claim for mental health restrictions notwithstanding, the uncontradicted findings of the state agency consultants controvert Joseph's call for any off-task limitations. *See Austin B. v. O'Malley*, C.A. No. 23-519-PAS, 2024 WL 3329754, at *3 (D.R.I. July 8, 2024) (the consultants' findings that plaintiff could sustain a normal work schedule "necessarily means that materially excessive off-task time and absenteeism were both considered and not found").

Joseph finally argues that the ALJ failed to "build an accurate and logical bridge" from the evidence to the RFC. ECF No. 12 at 15. This contention presents no new factual details or evidence specific to this case and is nothing more than a conclusory, boilerplate addition to Joseph's brief that seems to again request that the Court reweigh the evidence in a manner more favorable to Joseph. Since Joseph elected not to file a reply, the Court is left with no basis to consider this undeveloped argument. As noted throughout this decision, the ALJ considered the medical opinions, prior administrative medical findings, and Joseph's own statements in formulating the RFC, and the resulting RFC is supported by substantial evidence, contains no legal error, and must be affirmed.

### D.  Step 5:  GED Reasoning Level Two Jobs

Finally, at Step 5 of the process, the VE testified that Joseph could perform the requirements of the representative occupations of (1) Hand Packer, (2) Janitor, and (3) Laundry Worker. ECF No. 7 at 73-77. The Dictionary of Occupational Titles ("DOT") issued by the Department of Labor assigns every occupation a General Educational Development ("GED") reasoning level, ranging from level

---

*order*, (D.R.I. Jan. 27, 2025). The Court is troubled that counsel repeatedly reuses a failed argument without recognizing or attempting to distinguish the Court's prior decisions. Mr. Gannon is reminded of his duty of candor to the court.

one (the lowest level) to level six (the highest). U.S. Dep't of Labor, Dictionary of Occupational Titles, App. C (4th ed. 1991). The three occupations the VE identified as potential occupations for Joseph all have a GED reasoning level of two. ECF No. 12 at 16.

Joseph argues that the ALJ did not "detect or resolve the seeming conflict between the DOT's description of the jobs in question and the vocational expert's testimony that a person limited to the performance of simple, repetitive tasks could perform them." *Id.* at 17. In short, Joseph contends that because he is limited to simple, repetitive tasks, he is precluded from performing jobs requiring a GED reasoning level of two. The Commissioner counters that this argument has been forfeited because it was not raised at the administrative level and that the argument fails on substantive grounds, as Joseph's counsel has been repeatedly advised. *Id.* at 18-20.

As to forfeiture, Joseph's counsel was afforded an opportunity to cross-examine the VE at the hearing before the ALJ and did not pose any questions about how a person who is limited to the performance of simple, repetitive tasks could perform the representative occupations. *See* ECF No. 7 at 76-77. As a result, the argument is forfeited. *See Jose M. v. O'Malley*, C.A. No. 23-319MSM, 2024 WL 3886749, at *5 (D.R.I. Aug. 20, 2024) ("Plaintiff's argument fails because the ALJ afforded him an opportunity to question the VE, which his attorney waived."), *report and recommendation adopted*, C.A. No. 1:23-CV-00319-MSM-PAS, 2024 WL 4063770 (D.R.I. Sept. 5, 2024).

Even if the argument was not forfeited, it would fail. The Court has repeatedly held that a claimant like Joseph who is limited to simple, repetitive tasks may perform jobs requiring GED reasoning levels of two or three. *Su Y. v. O'Malley*, C.A. No. 23-CV-541-JJM-PAS, 2024 WL 3385200, at *3 (D.R.I. July 11, 2024). In *Emily C.*, the Court pointed out that "Plaintiff's counsel

[James J. Gannon][6] is aware that the position for which he advocates is no longer good law in this District, because the Court has previously rejected the argument in several recent cases for which Plaintiff's counsel was attorney of record." 2025 WL 1263715, at *6 (citing *Christine L. v. Colvin*, C.A. No. 24-145-LDA, 2024 WL 5118440, at *7 (D.R.I. Dec. 16, 2024); *Su Y.*, 2024 WL 3385200 at *3; *Ryan Y. v. O'Malley*, C.A. No. 23-540-PAS, 2024 WL 3329755, at *8 (D.R.I. July 8, 2024)). The Court again rejects this argument and again finds that the RFC is consistent with GED reasoning level two or three jobs.

### V. CONCLUSION

For the reasons discussed herein, Plaintiff's Motion to Reverse the Decision of the Commissioner (ECF No. 12) is DENIED and Defendant's Motion for an Order Affirming the Decision of the Commissioner (ECF No. 14) is GRANTED. The Clerk shall enter Final Judgment in favor of Defendant.

/s/  Amy E. Moses
AMY E. MOSES
United States Magistrate Judge

December 3, 2025

---

[6] Earlier this year Mr. Gannon was admonished by the Court for making this argument and was advised to "be mindful of his obligation of candor toward the tribunal under Rhode Island Rules of Professional Conduct Rule 3.3(a)(2) which applies in this Court via LR Gen 208." *Emily C.*, 2025 WL 1263715, at *6 n. 1. The Court is troubled by Mr. Gannon's continued recycling of this argument.